# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SUSAN BAKER, INDIVIDUALLY AND ON
BEHALF OF THE HEIRS AT LAW OF
JACKIE L. SARFF, Deceased,

                      Plaintiff,

      vs.                              Case No.  10 CV 1257 - JTM

PROMISE REGIONAL MEDICAL CENTER -
HUTCHINSON, INC., f/k/a HUTCHINSON
HOSPITAL CORPORATION, n/k/a
HUTCHINSON REGIONAL MEDICAL
CENTER, INC.,

                    Defendant.

## <u>PRETRIAL ORDER</u>

Pursuant to Fed. R. Civ. P. 16(e), a pretrial conference was held in this case on March 30, 2012, before David J. Waxse, U.S. Magistrate Judge.  By agreement, the pretrial conference was conducted by telephone.

This pretrial order shall supersede all pleadings and control the subsequent course of this case.  It shall not be modified except by consent of the parties and the Court's approval, or by order of the Court to prevent manifest injustice.  *See* Fed. R. Civ. P. 16(d); D. Kan. Rule 16.2(c).

## 1.     APPEARANCES.

The plaintiff, Susan Baker, Individually and on Behalf of the Heirs of Jackie Sarff, Deceased, appeared at the pretrial conference through counsel, Thomas M. Warner and Anne Pankratz of Warner Law Offices.   The defendant, Promise Regional Medical Center - Hutchinson, Inc., f/k/a Hutchinson Hospital Corporation, n/k/a Hutchinson Regional Medical

Center, Inc. (Hutchinson Regional), appeared through counsel, Randy J. Troutt and Gwynne E. Birzer of Hite, Fanning & Honeyman L.L.P.

**2.      NATURE OF THE CASE.**

This wrongful death action against Hutchinson Regional, filed pursuant to K.S.A. 60-1901 *et seq*., arose as a result of alleged negligent care and treatment provided to Jackie Sarff, a 73 year old man during his stay at Hutchinson Regional for the period of August 4, 2008, through August 17, 2008.  This is not a survival action.

**3.      PRELIMINARY MATTERS.**

**a.      Subject Matter Jurisdiction.**   Diversity subject matter jurisdiction is invoked under 28 U.S.C. § 1332 and is not disputed.

**b.      Personal Jurisdiction.**  The Court's personal jurisdiction over the parties is not disputed.

**c.      Venue.**  The parties stipulate that venue properly rests with this court.

**d.      Governing Law.**  Subject to the Court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law:  Kansas substantive law; federal procedural law.

**4.      STIPULATIONS.**

**a.**      The following facts are uncontroverted:

1.      Jackie Sarff was admitted to Hutchinson Regional on August 4, 2008, for a laparoscopic assisted right colectomy due to a Grade 2, T3 adenocarcinoma of the right colon.

2.      Mr. Sarff received care and treatment at Hutchinson Regional from the period of August 4, 2008, through August 17, 2008.

3.      On August 12, 2008, the attending physician, Dr. Scott Clarke, ordered placement of an NG tube.

4.      Pursuant to Dr. Clarke's order, nurse Patricia Lisenby attempted to place the NG tube.

5.      On August 12, 2008, during insertion of the NG tube, Mr. Sarff aspirated and coded.

6.      Jackie Sarff (DOB 10/27/34) died on August 17, 2008, at the age of 73 while at Hutchinson Regional. At the time of his death, he was a resident of Great Bend, Barton County, Kansas.

7.      Mr. Sarff's Certificate of Death states an "immediate cause of death of anoxic encephalopathy Due to (or as a consequence of) cardiopulmonary arrest".

8.      Plaintiff Susan Baker is the surviving daughter of the decedent, Jackie Sarff. She was a resident of the State of Illinois at the time of Jackie Sarff's death and is presently a resident of the State of Georgia.

9.      Bonnie Sarff is the surviving spouse of decedent, Jackie Sarff.

10.      Patricia Lisenby is a Licensed Practical Nurse and was an employee of Hutchinson Regional during the care and treatment of Jackie Sarff at Hutchinson Regional.

11.      Vickie Palmatier is a Registered Nurse and was an employee of Hutchinson Regional during the care and treatment of Jackie Sarff at Hutchinson Regional.

12.      Defendant Hutchinson Regional is a healthcare provider under Kansas Law.

**b.**      The following documents constitute business records within the scope of Fed. R. Evid. 803(6) and may be introduced in evidence during trial without further foundation, subject to objections based solely on grounds of relevancy:

1.      Death Certificate of Jackie Sarff.

2.      Hutchinson Hospital Corp. Standards Manual, Documentation Policy, including attachments (Exhibit 10 of record).

3.      Hutchinson Hospital Corp. Standards Manual, Scope of Care - Education Department, including attachments (Exhibit 11 of record).

4.      Hutchinson Hospital Corp. Standards Manual, Continuing Nursing Education Providership Policy, including attachments (Exhibit 12 of record).

5.      Hutchinson Hospital Corp. Standards Manual, Nursing Orientation and Precepting Process policy, including attachments (Exhibit 13 of record).

6.      Hutchinson Hospital Corp. Standards Manual, Development of Nursing Standards, Policies and Protocols, including attachments (Exhibit 15 of record).

7.      Hutchinson Hospital Corp. Standards Manual, Preceptor Program Policy, including attachments (Exhibit 16 of record).

8.      Hutchinson Hospital Corp. Standards Manual, Nursing Service Performance Evaluation Policy (Exhibit 18 of record).

9.      Hutchinson Hospital Corp. Standards Manual, Plan to Provide Care-Medical Surgical Unit (Exhibit 20 of record).

**c.**      On *direct* examination, copies of portions of medical literature may be offered into evidence instead of the original literature or information if it is identified as to text, author, and publication date.  On request, counsel shall provide opposing counsel a full copy of the medical literature offered or, if what is offered is a portion of a larger text, on request counsel must provide a copy of the entire section of the text relating to the topic to which the portion of the literature refers.  Any such literature must be produced to all parties at least three weeks before trial.  All other objections to the admissibility of such evidence are reserved.  This stipulation is not intended and shall not be construed as requiring any advance notice for the use of medical literature used in *cross*-examining a witness.

**d.**      Medical records of Jackie Sarff, x-rays, and the like, including outside records received in the ordinary course of business by treating physicians, may be used without the need for foundation witnesses.  All other objections to the admissibility of such evidence are reserved.

**e.**      Medical records and bills and affidavits of records custodians relating to the care and treatment of Jackie Sarff may be introduced into evidence without the need for a records custodian to establish foundation.  Copies of the records may be utilized as evidence in lieu of the originals.  All other objections to the admissibility of such evidence are reserved.

**f.**      Overlays, reproductions, and other forms of enlargements or enhancements which do not distort listed exhibits may be permitted without further foundation.

**g.**      Copies of exhibits may be used during trial in lieu of originals.

**h.**      The original Hutchinson Regional medical record of Jackie Sarff will be present at trial.

- 4 -

**i.**     At trial, witnesses who are within the subpoena power of the Court and who are officers, agents, or employees of the parties need not be formally subpoenaed to testify, provided that opposing counsel provides a list of the name of the witness, and such list is given at least 14 business days advance notice of the desired date of trial testimony.  For purposes of this entire pretrial order, the calculation of "business days" does not include Saturday, Sunday, or any legal holiday as defined by Fed. R. Civ. P. 6(a)(4).

**j.**     In order to avoid trial delays, counsel shall confer in good faith and keep opposing counsel informed of when the former reasonably expects to complete their case-in-chief.  Further, by no later than 5:00 p.m. each day of trial, counsel shall confer and exchange a good faith list of the witnesses who are expected to testify the next day of trial.

**k.**     The claimed medical expenses to date were necessary, and the amounts are reasonable for the services provided.  However, defendant specifically reserves the *Bates v. Hogg* issues as the medical expenses and causation issues, which defendant plans to address via a motion *in limine*.  That is, defendant reserves the right to argue that amounts charged by providers but written off pursuant to private insurance agreements should not be included in any judgment entered in favor of plaintiff.

## 5.     FACTUAL CONTENTIONS.

### a.     Plaintiff's Contentions.

Plaintiff adopts by reference the above stated stipulated facts and the factual statements contained in her theories of recovery and factual issues.  In addition, plaintiff states:

1.     Jackie Sarff was a 73 year old male who had a good medical history.  His past medical history was high blood pressure, elevated cholesterol, heartburn, chronic kidney disease and anemia.  When he lost 25 pounds he sought medical care and was diagnosed with colon cancer.

2.     On August 4, 2008, he had surgery to remove his colon cancer with a right colectomy.  He also underwent a cholecystectomy.  In the post-op setting he developed acute chronic kidney failure and anemia.  He was responding to treatments for these conditions.  He was up ambulating and doing well.

3.     On August, 7, 2008, a nasogastric tube was placed because of abdominal distension.  It took the nurse four attempts to place the NG tube and this was only after the RN requested and received help from the Clinical Care Coordinator on duty at the time.  Mr. Sarff was pulling the tube out and he grabbed the nurse's arm.  The nurse's notes in the medical record

document this difficult nasogastric tube placement.   His abdomen improved and the nasogastric tube was removed.

4.     One of the primary risks of NG tube insertion is gagging, throwing up and aspiration of gastric contents which can occlude the airway and cause serious injury or death.

5.     On August 12, 2008, Mr. Sarff again developed abdominal distention and the physician again ordered a nasogastric tube to be placed to decompress the bowel.  It is not unusual for a patient to have an NG tube especially after abdominal surgery.

6.     Patricia Lisenby, LPN, saw the order to place the NG tube.  She went to Charge Nurse Vickie Palmatier and told her she wanted to place the NG tube.  Charge Nurse Palmatier said, "OK."  Jackie Sarff was up and sitting in a chair visiting with his wife when LPN Lisenby came into the room and announced that she was going to place the NG tube.  Ms. Sarff left the room.

7.     It was approximately 10:00 a.m. when LPN Lisenby attempted to place the tube while Jack was sitting in a recliner chair.  KY Jelly was used as a lubricant.  LPN Lisenby attempted the procedure when there was no other nurse in the room to assist.  She was not supervised by Charge Nurse Palmatier or any other Registered Nurse.

8.     LPN Lisenby documented that the patient vomited large amounts of green liquid when she attempted to place the tube.  The patient had increased moist labored respirations, became unresponsive, and she activated the code blue alarm.  According to the medical records, the code was called at 10:10 a.m. for respiratory depression.  The patient received epinephrine, atropine, vasopressin, sodium bicarbonate, and calcium.  A blood pressure was returned at 104 systolic at 10:38 a.m.  Victoria O'Neal, Director of Operations for defendant, testified that the Code Blue was called at 10:18 a.m.

9.     LPN Lisenby did not obtain appropriate suctioning equipment that is required for NG tube insertion.  She had a small suctioning device but needed a Yankauer.  She further failed to suction Mr. Sarff when he was throwing up.  She failed to turn his head to the side when he started vomiting which is known to help mitigate aspiration of gastric contents.

10.    Dr. Sourk, the Pulmonologist, responded to the respiratory arrest.  He performed endotracheal intubation and participated in the resuscitation of Mr. Sarff.  Later, Dr. Sourk's nurse practitioner dictated a note that stated that the patient was found by the nurse apneic in the chair, and there was a large amount of gastric drainage that was suctioned.

11.     Jackie Sarff was transferred to ICU where it was discovered that he suffered severe, irreversible brain damage from lack of oxygen due to this episode of aspiration on August 12.  He was unable to recover from the severe brain damage from lack of oxygen and died on August 17, 2008. Dr. Holcomb dictated on his discharge summary that the patient died of anoxic encephalopathy.  He dictated the patient suffered a cardiopulmonary arrest during placement of the NG tube, and the patient aspirated by report of Dr. Sourk.

12.     Dr. Degner performed an autopsy which revealed Grade 2, T3 adenocarcinoma of the colon completely resected.  There was no evidence on the autopsy of residual cancer.  There was bilateral mild to moderate bronchial pneumonia with passive congestion.  The cause of death was ruled multiple organ failure secondary to previous generalize anoxia with a cardiac arrhythmia as a possible etiology.

13.     Dr. Degner testified in his deposition that there may have been partial obstruction of the patient's airway leading to decreased oxygen, leading to cardiac arrhythmia, with the underlying 40% narrowing of one of the coronary arteries.  Dr. Degner could not testify about what the cause of the anoxic event was.

14.     Mollie Mansur, RN, was the ICU nurse who responded to the code blue and who took care of Mr. Sarff in the ICU.  She testified that she believes that the code was secondary to the NG tube placement and aspiration.  She testified that she could not identify any other cause for the respiratory arrest besides placement of the NG tube and aspiration.

15.     Dr. Sourk testified that he knew nothing about an attempted NG tube placement when he arrived at the code.  He testified that it would have been important information for him to know that the patient aspirated while an LPN was attempting NG tube placement which lead to the code. Dr. Sourk gave the opinion that the immediate cause of Mr. Sarff's code blue was aspiration of gastric contents, vomiting, and the stomach contents going into the lung.  He testified the NG tube placement puts a patient at risk for aspiration.  He testified that the airway was partially occluded and that the patient may have had laryngospasm secondary to the aspiration. He further testified that there was no evidence of Mr. Sarff having a heart attack that led to the code.  In fact, there are no rhythm strips from the code that would indicate that the code was precipitated by a heart attack.

16.     Dr. Sourk testified that aspiration got everything started.  He testified that the patient possibly gagged and vomited, then developed a slow heart rate, passed out, vomited, and the vomit went down into the patient's lungs. The precipitating event was vomiting and retching and then aspiration.  He

testified that the airway was partially occluded which may have led to a low heart rate, low blood pressure, and then subsequently the arrest.

17.     LPN Lisenby testified that she placed the NG tube while Mr. Sarff was still in the recliner chair.  She used KY Jelly as a lubricant, and that she had no assistance with the procedure.  She testified that she did not review the nurse's notes in the medical record before she attempted the procedure, she did not know that an RN reported great difficulty when inserting an NG tube on August 7, 2008, and that the RN had to request assistance from a charge nurse before the NG could be successfully placed.  LPN Lisenby testified that she thought this was a routine NG tube placement.  She testified that if she had known about the previous difficulty in trying to place the NG tube just a few days earlier she would have asked for help.

18.     Lucia Cooper, Nursing Supervisor over the entire hospital, testified that at defendant hospital, an LPN has to be supervised by an RN or the clinical care coordinator (charge nurse).  She testified that LPNs are allowed to work without supervision as long as they have demonstrated sufficient skill and proficiency on the nursing procedure in question and that nurse's skill and proficiency is documented on the Skills Checklist.  The particular skill must be "signed off" on the skills checklist verifying that the nurse in question is competent to perform that skill.  This is required by hospital policy and the standard of care.

19.     LPN Lisenby never demonstrated her competence in placing an NG tube.  Her skills checklist, which is in her employment file, does not reflect that she was competent to insert an NG tube unassisted.  She was not "signed off" for placing NG tubes on her nursing skills checklist.  In addition, she did not receive direct supervision from a registered nurse while attempting to place the NG tube.  Nursing Supervisor Lucia Cooper testified that the nursing signature sheet in Mr. Sarff's chart is where the nurses sign off as caregivers for a patient.  She testified that in this case, the nursing signature sheet does not contain the signature by Vickie Palmatier or any other RN.  Nursing Supervisor Cooper testified that the fact that there is no signature on the nursing signature sheet could mean that LPN Lisenby was not supervised.

20.     Vickie Palmatier testified that she was the Charge Nurse during LPN Lisenby's shift.  She testified that LPN Lisenby's patient care that she provided to Mr. Sarff on August 12, 2008, was required to be supervised by an RN.  LPN Lisenby advised Charge Nurse Palmatier she wanted to place the NG tube.  Charge Nurse Palmatier allowed LPN Lisenby to go ahead and place the NG tube unassisted and unsupervised.  Charge Nurse Palmatier knew that LPN Lisenby was not supervised by an RN or anyone else when she attempted to place the NG tube.

21.     Plaintiff's pathology expert, Dr. Michael Fishbein, has opined that:

. . .the acute cause of death was pneumonia, the pathogenesis of which was aspiration of gastric contents, associated with the ileus and gastric distension that developed in the absence of a functioning NG tube.  The hypoxic changes that were present particularly in the brain were secondary to the arrest and lung injury as a result of the aspiration.  I disagree with Dr. Degner's comment that a specific etiology for the apneic episode which lead [sic] to general anoxia is not clearly identified.  The medical record and the deposition of Patricia Lisenby clearly document the temporal relationship between the attempt at NG tube placement, vomiting of green fluid, and unresponsiveness of Mr. Sarff. Indeed, at the time of resuscitation attempts, large amounts of gastric material were suctioned from the airway.  It is likely that some of the material was aspirated into the lung and caused hypoxia, lung injury, and eventual pneumonia.

22.     Dr. Fishbein further opined that Mr. Sarff's life expectancy was between 5 to 11.8 years and that no residual colon carcinoma was present at autopsy and that it is more likely than not that Mr. Sarff was cured of his colon cancer.

**b.     Defendant's Contentions.**

1.     Hutchinson Regional nurses and administrators acted within the standard of care at all times in their treatment of Jackie Sarff.

2.     On August 4, 2008, Jackie Sarff, a 73 year old man, was admitted to Hutchinson Regional for a laparoscopic assisted right colectomy due to colon cancer.   Following the procedure, the patient consistently complained of pain in his abdomen area.  During Mr. Sarff's stay at Hutchinson Regional, care was provided under the direction of his admitting and attending physicians.

3.     After the surgery, Mr. Sarff developed complications including consistent complaints of abdominal discomfort, and he developed an ileus.  On August 9, the attending physician recommended an NG tube be placed.  At the direction of the attending physician, an NG tube was placed, and Mr. Sarff's ileus appeared to have somewhat improved.  The next day, the NG tube was removed.  Mr. Sarff began having several bouts of emesis.  The attending physician recommended if the emesis continued and his condition changed, the NG tube would be placed again.  On August 11, 2008, Mr. Sarff's ileus began to worsen, and his abdomen was firm.  The attending physician again recommended an NG tube be placed, but Mr. Sarff declined.   On August 12, 2008, due to Mr. Sarff's worsening

condition, the attending physician recommended and ordered an NG tube be placed. Trisha Lisenby, an LPN of 24 years, placed the NG tube. As the NG tube was placed, Mr. Sarff began to aspirate, and he coded. Nurse Lisenby promptly called for a code. The hospital code blue team promptly responded, but Mr. Sarff died on August 17, 2008.

4.    Hutchinson Regional denies it departed from the standard of care applicable to a health care provider under the facts and circumstances of this case. Hutchinson Regional also denies plaintiff's damages are of the nature and extent claimed.

5.    Hutchinson Regional and its nurses and administrators neither departed from the standard of care nor caused injuries in rendering care to Jackie Sarff. Hutchinson Regional denies each and every claim and contention of plaintiff against it. At all times, Hutchinson Regional met the applicable standard of care for a health care facility under the facts and circumstances of this case. As a result, Hutchinson Regional denies all of plaintiff's allegations of wrongful conduct made against it. At all times material to this case, the nurses of the hospital, as well as the hospital, performed their duties with that degree of care, skill, and diligence commensurate with their level of training, education, and experience.

6.    Plaintiff's claims against Hutchinson Regional are barred by pre-existing, independent, intervening or superseding causes or events. Jackie Sarff's death and alleged damages are the fault of no one. Hutchinson Regional cannot be held vicariously liable for the alleged negligent acts or omissions of any physician and any other health care provider acting outside the scope of their employment.

7.    Hutchinson Regional denies it is in any way liable to the plaintiff. In the event Hutchinson Regional is subsequently determined to be liable, it asserts its entitlement to credit/set-off/allowance/adjustment/ accommodation for medical expenses credited, written off or otherwise extinguished or which may remain outstanding including reduction of judgment to reflect medical expenses paid through any policy of insurance.

## 6.    THEORIES OF RECOVERY.

**a.    List of Plaintiff's Theories of Recovery.** Plaintiff asserts that she is entitled to recover upon the following theory [alternative theories]:

Plaintiff asserts that the heirs at law of Jackie Sarff are entitled to recover for his wrongful death based upon the following theories:

1.  Negligence as to LPN Lisenby, Charge Nurse Vickie Palmatier and Promise Regional Medical Center, f/k/a Hutchinson Hospital Corporation, as specified below.

2.  Vicarious liability as to Promise Regional Medical Center f/k/a Hutchinson Hospital Corporation for the negligence of LPN Lisenby and Charge Nurse Palmatier acting within the scope of their employment as specified below.

**b.   Essential Elements of Plaintiff's First Theory of Recovery-Negligence.**

Subject to the Court's determination of the law that applies to this case, the parties believe in order to prevail on this theory of recovery, plaintiff has the burden of proving the following essential elements:

1.  A hospital-patient relationship existed between defendant Promise Regional Medical Center f/k/a Hutchinson Hospital Corporation n/k/a Hutchinson Regional Medical Center and decedent Jackie Sarff.

2.  Defendant owed Jackie Sarff a duty to provide standard nursing care.

3.  This duty was breached.

4.  The breach caused or contributed to Jackie Sarff's death.

5.  The negligence of LPN Lisenby and RN Palmatier should be imputed to the defendant under the Master Servant Doctrine.

6.  The heirs at law of Jackie Sarff sustained damages by reason of his death.

7.  More specifically, plaintiff contends defendant was negligent in the following particulars:

    a.  Allowing LPN Lisenby to insert an NG tube despite the fact that she did not have her competence for this procedure "signed off" for inserting NG tubes.  Patient safety rules require the defendant hospital to ensure that only properly trained and competent nurses place NG tubes in patients like Jackie Sarff.  Compliance with this duty is even more crucial when the procedure, in this case, NG tube placement, puts patients at risk for gagging, vomiting and aspiration of gastric contents which could occlude the airway and cause serious injury or death if not handled properly.

    b.  Allowing LPN Lisenby to place an NG tube without being supervised by a Registered Nurse.  Patient Safety rules as reflected in the Hospital policy and the standard of care require that

procedures such as NG tube placement by an LPN be supervised by a Registered Nurse.  However, if the LPN has not previously demonstrated her competency with NG tube placement she is not allowed to perform this procedure on a live patient whether supervised or not.  The reason for this patient safety rule is because NG tube placement puts a patient at risk for gagging, vomiting, aspiration of gastric contents and occlusion of the patient's airway which can cause serious injury and death if not handled properly.  An LPN should be properly trained and vetted before that LPN is allowed to perform an unsupervised procedure that puts a patient at risk for aspiration and airway occlusion which can result in anoxic brain injury and death.  RN Vickie Palmatier was the Clinical Care Coordinator who authorized LPN Lisenby to insert the NG tube without supervision contrary to hospital policy and the standard of care.

c.      LPN Lisenby failed to suction when Mr. Sarff gagged, vomited and aspirated gastric contents.  It is below the standard of care to fail to suction a patient in connection with NG tube placement when the patient gags and vomits as it will likely lead to aspiration.

d.      LPN Lisenby failed to have the appropriate suction equipment with her in the room.  The small tip catheter she had is inadequate to manage vomitus and prevent aspiration of gastric contents.  She needed a large Yankauer for suctioning.  Another nurse had to get a Yankauer after the code blue was called causing a delay in suctioning Mr. Sarff's airway.

e.      LPN Lisenby failed to turn Mr. Sarff's head to the side when he started vomiting.  Such a maneuver can help mitigate aspiration of gastric contents.

f.      LPN Lisenby failed to provide critical information to the code team and Dr. Sourk, the physician in charge of the code, that Mr. Sarff's respiratory arrest was related to the nasogastric tube placement.

g.      LPN Lisenby failed to inform Vickie Palmatier that she had not had her competency validated on nasogastric tube insertion.

h.      LPN Lisenby failed to immediately ask for assistance when Mr. Sarff started vomiting.

i.      LPN Lisenby failed to review the medical record which documented a difficult NG tube placement on August 7, 2008, that required multiple attempts and assistance by the charge nurse.  Had

she known that there had been a recent difficult NG tube placement with Mr. Sarff, she would have asked for assistance. LPN Lisenby erroneously thought this was a routine NG tube placement.

j.  LPN Lisenby delayed in calling the code blue.  According to hospital records, the code was called at 10:18 am.  By the time the code team came to resuscitate Mr. Sarff, he had already suffered irreversible brain damage from lack of oxygen.

**7.  DEFENSES.**

**a.  List of Defendant's Defenses and Affirmative Defenses.**  Defendant asserts the following defenses and affirmative defenses:

1.  Plaintiff's claims for relief are barred by K.S.A. 60-3801 *et seq*.

2.  Defendant acted within the standard of care in rendering proper care to Jackie Sarff and did not cause or contribute to plaintiff's claimed injuries. As such, defendant was not negligent under Kansas law.

3.  Defendant denies the nature and extent of plaintiff's claimed injuries and damages.

4.  Jackie Sarff's death was potentially due to events and conditions over which defendant could not control or which could have occurred without fault on anyone's part.

5.  Defendant specifically denies each and every allegation of negligence.

6.  Defendant affirmatively alleges the provisions of Kansas law relating to actions against healthcare providers are applicable to this case, and more specifically:  a) defendant requests any verdict rendered in the above cause for future damages be itemized and expressed by the trier of fact at present value; and b) in the event non-economic damages are awarded to plaintiff, the limitation on non-economic damages provided under Kansas law be applied and any award of non-economic damages in excess of the statutory limitations shall be reduced by the Court to the maximum amount allowed by law.

**b.  Essential Elements of Defendant's Theory of Recovery.**

N/A

8.   **FACTUAL ISSUES.**

One or more of the parties believe that the following material issues will need to be resolved at trial by the trier of fact if summary judgment is not granted:

   a.   Whether Hutchinson Regional nurses providing care and treatment to Jackie Sarff performed their duties within the applicable standard of care for a health care facility on August 12, 2008.

   b.   Whether Hutchinson Regional caused or contributed to the death of Jackie Sarff and plaintiff's claimed injuries and damages, and if so, the nature and extent of those damages that are the direct and proximate consequences of the defendant's breach of duty.

   c.   The nature and extent of plaintiff's damages.

9.   **LEGAL ISSUES.**

One or more of the parties believe that the following are the significant legal or evidentiary issues that will need to be resolved by the Court in this case, whether on summary judgment motion or at trial:

   a.   Whether plaintiff timely disclosed his expert witnesses, and whether the expert testimony shall be stricken at trial.

   b.   Whether plaintiff can prove by a preponderance of the evidence all essential elements of her negligence claim (including duty, breach, causation, and damages).

   c.   The admissibility of evidence establishing the existence of liens, rights of subrogation, or rights of reimbursement to monies recovered by plaintiff.

   d.   Appropriate jury instructions and verdict form.

   e.   Applicable standard of care for defendant.

   f.   Rulings on Motions *in Limine*.

10.   **DAMAGES.**

    a.   **Plaintiff's Damages.**

        1.   <u>Non-Economic Damages for the Wrongful Death Action</u>:

            a.   Mental Anguish, Suffering and Bereavement
                  of the Heirs-at-Law             $500,000.00

        2.   <u>Economic Damages</u>

            a.   Medical Expenses             $  51,340.25*

            b.   Funeral Expenses             $  12,739.44

            c.   Bonnie Sarff Pecuniary Damages:     $500,000.00
                  Loss of marital care, guidance, services,
                  protection, nurturing and counseling, and
                  loss of a complete family

            d.   Susan Baker Pecuniary Damages:     $500,000.00
                  Loss of parental care, guidance, services,
                  protection, nurturing and counseling and
                  loss of a complete family

            *Plaintiff reserves the right to amend, by enlarging or decreasing these values based upon additional information that may be obtained prior to trial. The parties are not in agreement as to the total amount of medical expenses from August 12, 2008, through August 17, 2008. Plaintiff's figures are noted above ($51,340.25). Defendant calculates medical expenses to be $46,424.85.

    b.   **Defendant's Damages.**

        None claimed.

11.   **NON-MONETARY RELIEF REQUESTED, IF ANY.**

    None.

12.   **AMENDMENTS TO PLEADINGS.**

    None.

13.     **DISCOVERY.**

The parties agree that defendant may depose plaintiff's experts, and defendant may supplement its expert disclosures within ten days after plaintiff's experts have been deposed. Under these circumstances, the parties may conduct discovery beyond the deadline for completion of discovery, but the Court will not be available to resolve any disputes that arise during the course of this extended discovery.

14.     **WITNESSES AND EXHIBITS.**

a.     **Final Witness and Exhibit Disclosures Under Rule 26(a)(3).**  The parties' final witness and exhibit disclosures pursuant to Fed. R. Civ. P. 26(a)(3)(A) shall be filed **no later than 21 days before trial**.  With regard to each witness disclosed under Fed. R. Civ. P. 26(a)(3)(A)(i), the disclosures also shall set forth the subject matter of the expected testimony and a brief synopsis of the substance of the facts to which the witness is expected to testify. Witnesses expected to testify as experts shall be so designated.  Witnesses and exhibits disclosed by one party may be called or offered by any other party.   Witnesses and exhibits not so disclosed and exchanged as required by the Court's order shall not be permitted to testify or be received in evidence, respectively, except by agreement of counsel or upon order of the Court. The parties should bear in mind that seldom should anything be included in the final Rule 26(a)(3)(A) disclosures that has not previously appeared in the initial Rule 26(a)(1) disclosures or a timely Rule 26(e) supplement thereto; otherwise, the witness or exhibit probably will be excluded at trial.  *See* Fed. R. Civ. P. 37(c)(1).

b.     **Objections.**    The parties shall file any objections under Fed. R. Civ. P. 26(a)(3)(B) **no later than 14 days before trial**.  The Court shall deem waived any objection not timely asserted, unless excused by the Court for good cause shown.

c.      **Marking and Exchange of Exhibits.**  All exhibits shall be marked **no later than 5 business days before trial**.  The parties shall exchange copies of exhibits at or before the time they are marked.   The parties shall also prepare lists of their expected exhibits, in the form attached to this pretrial order, for use by the courtroom deputy clerk and the court reporter.   In marking their exhibits, the parties shall use preassigned ranges of numbered exhibits.   Exhibit Nos. 1-400 shall be reserved for plaintiff(s); Exhibit Nos. 401-800 shall be reserved for defendant(s); Exhibits 801 and higher shall be reserved for any third party.   Each exhibit that the parties <u>expect</u> to offer shall be marked with an exhibit sticker, placed in a three-ring notebook, and tabbed with a numbered tab that corresponds to the exhibit number.   The parties shall prepare exhibit books in accordance with the requirements of the judge who will preside over trial.   The parties shall contact the judge's courtroom deputy clerk to determine that judge's specific requirements.

d.      **Designations of Deposition Testimony.**

(1)      <u>**Written Depositions.**</u>   Consistent with Fed. R. Civ. P. 26(a)(3)(A)(ii), any deposition testimony sought to be offered by a party other than to impeach a testifying witness shall be designated by page and line in a pleading filed **no later than 21 days before trial**.   Any counter-designation in accordance with Fed. R. Civ. P. 32(a)(6), and any objections to the designations made by the offering party, shall be filed **no later than 14 days before trial**.   Any objections to counter-designations shall be filed **no later than 5 business days before trial**.  <u>Before</u> filing <u>any</u> objections, the parties shall have conferred in good faith to resolve the dispute among themselves.   **No later than 3 business days before trial**, to facilitate the Court's ruling on any objections to designations or counter-designations, the party seeking to offer the deposition testimony shall provide the trial judge a copy of each deposition transcript at issue.

Each such transcript shall be marked with different colored highlighting.  Red highlighting shall be used to identify the testimony that plaintiff(s) has designated, blue highlighting shall be used for defendant(s), yellow highlighting shall be used for any third party, and green highlighting shall be used to identify the objections to any designated testimony.  After receiving and reviewing these highlighted transcripts, the Court will issue its rulings regarding any objections. The parties shall then file the portions of the depositions to be used at trial in accordance with D. Kan. Rule 32.1.

(2)    **Videotaped Depositions.**  The paragraph immediately above applies to videotaped depositions as well as written deposition transcripts.  After the Court issues its rulings on the objections to testimony to be presented by videotape or DVD, the Court will set a deadline for the parties to submit the videotape or DVD edited to reflect the designations and the Court's rulings on objections.

## 15.    MOTIONS.

### a.    Pending Motions.

None

By agreement of the parties, defendant will depose plaintiff's experts, and supplement their expert disclosures, if necessary, outside of the discovery deadline.

### b.    Additional Pretrial Motions.

After the pretrial conference, the parties intend to file the following motions:

Motions *in Limine*

The dispositive motion deadline, as established in the Amended Scheduling Order was December 30, 2011.

Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda submitted in connection with all further motions or other pretrial matters shall not exceed 30 pages, absent an order of the Court.

c. **Motions Regarding Expert Testimony.**  All motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, shall be **filed by 28 days before trial**.

Defendant previously filed a Motion to Strike Plaintiff's Expert Witnesses.  The Court determined defendant's motion to be moot in light of its ruling regarding plaintiff's Motion to Establish New Discovery Schedule.  Defendant will renew this objection at trial in order to preserve the record.

d. **Motions *in Limine*.**  All motions *in limine*, other than those challenging the propriety of an expert witness, shall be filed **no later than 14 days before trial**.  Briefs in opposition to such motions shall be filed within the time period required by D. Kan. Rule 6.1(d)(1), or at least **5 business days before trial**, whichever is earlier.  Reply briefs in support of motions *in limine* shall not be allowed without leave of Court.

16. **TRIAL.**

a. Trial in the case is scheduled to commence **May 7, 2012, at 9:30 a.m.** before the Honorable Kathryn H. Vratil.  Unless otherwise ordered, this is not a "special" or "No. 1" trial setting.  Therefore, during the month preceding the trial docket setting, counsel should stay in contact with the trial judge's courtroom deputy to determine the day of the docket on which trial of the case actually will begin.

b. Trial will be by jury.

**c.**     Estimated trial time is 5 - 10 business days.  Plaintiff believes the case can be tried in 5 days.  Defendant believes the case may continue over into a second week.  The parties acknowledge the Court's desire for this matter to be tried as efficiently as possible and will do their best to assure this.

**d.**     Trial will be in Wichita, Kansas, or such other place in the District of Kansas where the case may first be reached for trial.

**e.**     To ensure efficient and cost effective jury utilization, the Court's goal is that the jury will hear at least seven hours of uninterrupted testimony every single day of trial.  The chief cause of delay is the bench conference which interrupts the presentation of evidence to the jury.  With thoughtful planning and without prejudice to any party, the Court hopes to hear and decide all legal issues without disrupting the continuity of trial.  To accomplish this goal, and to make sure that counsel have sufficient opportunity to anticipate legal issues, witnesses and exhibits expected to be used in trial must be disclosed to opposing counsel 24 hours in advance.  In this way, counsel will have time to raise an issue the next day either before the jury is seated or during one of the recesses.

**f.**     Not all of the parties are willing to consent to the trial of this case being presided over by a U.S. Magistrate Judge, even on a backup basis if the assigned U.S. District Judge determines that his or her schedule will be unable to accommodate any trial date stated above.

**g.**     Because of constraints on the judiciary's budget for the compensation of jurors, in any case in which the Court is not notified of a settlement at least 1 full business day prior to the scheduled trial date, the costs of jury fees and expenses will be assessed to the parties, or any of them, as the Court may order.  *See* D. Kan. Rule 40.3.

17. **SETTLEMENT.**

    a. **Status of Settlement Efforts.**

The parties exchanged good faith settlement offers in accordance with the Court's initial Scheduling Order.

    b. **Mediation and/or Other Method of Alternative Dispute Resolution.** By agreement, the parties shall engage in good faith mediation within 30 days of trial.

18. **FURTHER PROCEEDINGS AND FILINGS.**

    a. **Status and/or Limine Conference.** Relatively close to the date of trial, Judge Vratil will schedule a status and/or limine conference.

    b. **Trial Briefs.** A party desiring to submit a trial brief shall comply with the requirements of D. Kan. Rule 7.6. The Court does not require trial briefs but finds them helpful if the parties anticipate that unique or difficult issues will arise during trial.

    c. **Voir Dire.** Due to substantially differing views among judges of this court concerning the extent to which counsel will be allowed to participate in voir dire, counsel are encouraged to contact the trial judge's law clerk or courtroom deputy (in accordance with the preference of the particular trial judge) to determine what, if anything, actually needs to be submitted by way of proposed voir dire questions. Generally, proposed voir dire questions only need to be submitted to address particularly unusual areas of questioning, or questions that are likely to result in objections by the opposing party.

    d. **Jury Instructions.**

        (1) Requests for proposed instructions in jury cases shall be submitted in compliance with Fed. R. Civ. P. 51 and D. Kan. Rule 51.1. Under D. Kan. Rule 51.1, the parties and the attorneys have the joint responsibility to attempt to submit one agreed set of preliminary

and final instructions that specifically focuses on the parties' factual contentions, the controverted essential elements of any claims or defenses, damages, and any other instructions unique to this case.  In the event of disagreement, each party shall submit its own proposed instructions with a brief explanation, including legal authority as to why its proposed instruction is appropriate, or why its opponent's proposed instruction is inappropriate, or both.  Counsel are encouraged to contact the trial judge's law clerk or courtroom deputy (in accordance with the preference of the particular trial judge) to determine that judge's so-called standard or stock instructions, e.g., concerning the jury's deliberations, the evaluation of witnesses' credibility, etc.; it is not necessary to submit such proposed jury instructions to the Court.

(2)     Proposed instructions in jury cases shall be filed **no later than 3 business days before trial**.  Objections to any proposed instructions shall be filed **no later than 1 business day before trial**.

(3)     In addition to filing the proposed jury instructions, the parties shall submit their proposed instructions (formatted in WordPerfect 9.0, or earlier version) as an attachment to an Internet e-mail sent to the e-mail address of the assigned trial judge listed in paragraph II(E)(2)(c) of the *Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means in Civil Cases*.

## 19.   OTHER.

a.   **Conventionally Filed Documents.**  The following documents shall be served by mail and by fax or hand-delivery on the same date they are filed with the Court if they are filed conventionally (i.e., not filed electronically):   final witness and exhibit disclosures and objections; deposition designations, counter-designations, and objections; motions *in limine* and briefs in support of or in opposition to such motions; trial briefs; proposed voir dire questions

and objections; proposed jury instructions and objections; and proposed findings of fact and conclusions of law.  In addition, a party filing a trial brief conventionally shall deliver an extra copy to the trial judge's chambers at the time of filing.

**b.      Miscellaneous.**

The Court usually will hold a status conference approximately one week prior to trial.

The courtroom is equipped with a television, VCR, Elmo, easel and projector screen for your use.  Counsel wishing to use other equipment should contact Sue Smith (316) 315-4306 at least 5 days prior to trial.

The courtroom number is 238.  Attorney/witness rooms are available for counsel use upon request.

**20.     POSSIBLE ADJUSTMENT OF DEADLINES BY TRIAL JUDGE.**

With regard to pleadings filed shortly before or during trial (e.g., motions *in limine*, trial briefs, proposed jury instructions, etc.), this pretrial order reflects the deadlines that the Court applies as a norm in most cases.  However, the parties should keep in mind that, as a practical matter, complete standardization of the Court's pretrial orders is neither feasible nor desirable.  Depending on the judge who will preside over trial, and what adjustments may be appropriate given the complexity of a particular case, different deadlines and settings may be ordered.  Therefore, from the pretrial conference up to the date of trial, the parties must comply with any orders that might be entered by the trial judge, as well as that judge's trial guidelines and/or exhibit instructions as posted on the Court's Internet website:

*(http://www.ksd.uscourts.gov/chambers).*

IT IS SO ORDERED.

Dated this 23rd day of April, 2012, at Kansas City, Kansas.

                                               s/ David J. Waxse

                                               David J. Waxse
                                               United States Magistrate Judge

| SUMMARY OF DEADLINES AND SETTINGS ||
|---|---|
| Event | Deadline/Setting |
| Extended deadline to complete any remaining discovery (if applicable) | |
| Mediation/settlement conference (if applicable) | |
| Dispositive motions (e.g., summary judgment) | November 30, 2011 |
| Defendant's supplemental expert witnesses | 10 days following deposing plaintiff's experts |
| Motions challenging admissibility of expert testimony | 28 days before trial |
| Trial | May 7, 2012 |
| Status and/or limine conference (if presently set) | |
| Final witness & exhibit disclosures | 21 days before trial |
| Objections to final witness & exhibit disclosures | 14 days before trial |
| Exhibits marked | 5 business days before trial |
| Deposition testimony designated | 21 days before trial |
| Objections to deposition designations, along with any counter-designations | 14 days before trial |
| Objections to counter-designations of deposition testimony | 5 business days before trial |
| Submission of disputed deposition designations to trial judge | 3 business days before trial |
| Motions in limine | 14 days before trial |
| Briefs in opposition to motions in limine | 5 business days before trial, unless due earlier under D. Kan. Rule 6.1(d)(1) |
| Proposed jury instructions | 3 business days before trial |
| Objections to proposed jury instructions | 1 business day before trial |
| Preliminary sets of proposed findings of fact and conclusions of law in bench trials | 5 business days before trial |

(Revised 5/93)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SUSAN BAKER, INDIVIDUALLY AND ON
BEHALF OF THE HEIRS AT LAW OF JACKIE L.
SARFF, Deceased,

          Plaintiff,

    vs.                                   Case No.  10 CV 1257-JTM

PROMISE REGIONAL MEDICAL CENTER -
HUTCHINSON, INC., f/k/a HUTCHINSON
HOSPITAL CORPORATION, n/k/a HUTCHINSON
REGIONAL MEDICAL CENTER, INC.,

          Defendant.

### EXHIBIT SHEET

Case No:  10 CV 1257-JTM                                   Exhibits

| No. | Description | I.D. | Off. | Adm. | Deposition or Witness |
|-----|-------------|------|------|------|----------------------|
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |
|     |             |      |      |      |                      |