

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

'12   OCT 31   P 2 :16

SUSAN BAKER, Individually
  and on Behalf of the HEIRS AT LAW
  of JACKIE L. SARFF, Deceased,
            Plaintiffs,

*v.*                                     Case No. 10-1257-JTM

PROMISE REGIONAL MEDICAL CENTER –
  HUTCHINSON, INC., f/k/a HUTCHINSON
  HOSPITAL CORPORATION,
            Defendant.


**INSTRUCTIONS**


# ORIGINAL

Instruction No. 1

MEMBERS OF THE JURY:

The presentation of evidence is now complete. I gave you some general instructions and definitions at the outset of this case and I now give you final instructions. You may read along with me, or you may simply listen as I read these instructions. If you read along, stay with me. You will each be allowed to take your copy of the instructions to the jury room for further reference during your deliberations.

You must follow the law as set out in these instructions and apply that law to the facts you find from the evidence presented in this trial. No single instruction or smaller group of instructions states the law; you must consider all the instructions as a whole. You are not to question the wisdom of any of these instructions.

Instruction No. 2

You must weigh and consider this case without sympathy and without bias for or against any party. You must not be influenced by anything not within the evidence, the instructions, or your own common sense, knowledge and experience.

You must consider and decide this case as an action between persons of equal standing in the community. A corporation is entitled to the same fair trial as an individual. All persons, including corporations, partnerships, unincorporated associations, and other organizations, stand equal before the law, and are to be dealt with as equals in a court of justice.

Circumstances in the case may arouse sympathy for one party or the other. Sympathy is a common, human emotion. The law does not expect you to be free of such normal reactions. However, the law and your oath as jurors require you to disregard sympathy and not to permit it to influence your verdict.

Instruction No. 3

Hutchinson Regional Medical Center ("Hutchinson Regional") is a nonprofit corporation and can act only through its employees. The negligence of an employee acting within the scope of his or her employment is the negligence of the corporation.

Hutchinson Regional is only responsible for the acts of its employees. Hutchinson Regional is not liable or otherwise responsible for the actions of any physician who may have been involved in the decedent's care and treatment. If you find that any physician is at fault as defined in these instructions, such fault cannot be attributed to Hutchinson Regional.

In this action, Hutchinson Regional is responsible for any negligent act or omission of L.P.N. Lisenby and/or Nurse Victoria Palmatier claimed by the plaintiffs.

If you find Lisenby and/or Palmatier was negligent, then you must find that the Hutchinson Regional was negligent. But if you find Lisenby and/or Palmatier was not negligent, then you must find that Hutchinson Regional was not negligent.

Instruction No. 4

You must consider all the evidence, but you need not accept all evidence as true or accurate.

You will determine the weight and credit to be given the testimony of each witness. You may use common sense, common knowledge and experience in weighing that testimony.

The number of witnesses who testify about a matter does not necessarily determine the weight of the evidence. The testimony of a fewer number of witnesses concerning any fact may be more credible than the testimony of more witnesses to the contrary.

You will determine the weight and credit to be given to each exhibit in similar fashion.

Instruction No. 5

In weighing the evidence and judging the credibility of witnesses, you may, and should, take into consideration the general information which you possess as to matters of common knowledge, observation and experience of life.

In weighing the testimony of the witnesses you may consider their demeanor while testifying, their interest or lack of interest in the outcome of the case and all other facts and circumstances which will help you decide the facts of the ease. You will decide whether to believe a witness and in evaluating a witness' testimony, you may want to ask yourself the following questions:

(1)     How well could the witness see or hear the things that the witness testified about?

(2)     How well was the witness able to remember and describe what happened?

(3)     Did the witness understand the questions and answer them correctly?

(4)     Did the witness seem believable to you?

If you believe that any witness has intentionally given false testimony on any material fact, you may disregard all or part of his or her testimony, but you are not required to believe or disbelieve all the testimony of any witness. If there has been conflicting testimony, you should reconcile it with truthfulness, if reasonably possible,

but if you cannot do so then you must use your best judgment in determining what testimony you will believe.

People often forget things, or they may honestly believe that something happened even though it turns later out that they were wrong. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to reject such testimony. Two or more persons witnessing an incident may see or hear it differently, and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to an important issue or an unimportant detail, and whether the discrepancy is innocent or intentional.

Instruction No. 6

The parties may prove any fact through either direct or circumstantial evidence. Direct evidence is direct proof of a fact, such as eyewitness testimony. Circumstantial evidence is indirect proof, where proving a chain of facts allows you to conclude another fact.

To decide if a fact has been proved by circumstantial evidence, consider all the evidence in the light of reason, common sense, and experience.

Circumstantial evidence and direct evidence may have equal weight.

Instruction No. 7

You may consider as evidence the testimony of witnesses and the exhibits admitted into evidence. You will have those exhibits in the jury room during your deliberations.

## Instruction No. 8

You may draw reasonable inferences from the evidence which you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts established by the evidence.

Instruction No. 9

Lawyers' statements, objections, and arguments are not evidence.

Instruction No. 10

If scientific, technical, or other specialized knowledge might assist you in understanding the evidence or in determining a fact in issue, a witness having special knowledge, skill, experience, training, or education, may provide opinion testimony on such matters.

You will decide what weight, if any, to give such opinion testimony. If you decide the witness lacks sufficient education or experience to offer valid opinion testimony, or if you conclude the reasons given in support of the opinion are not sound or the opinion is outweighed by other evidence, you may disregard the opinion entirely.

Instruction No. 11

A witness may be discredited or "impeached" by contradictory evidence, or by evidence that at some other time the witness has said or done something, or failed to say or do something, which is inconsistent with the witness's testimony at trial.

If you believe any witness has been so impeached, you may give the testimony of that witness such weight as you believe it deserves.

Instruction No. 12

Hutchinson Regional Medical Center is formerly known as Promise Regional Medical Center or Hutchinson Hospital Corporation. During the time period in which the facts giving rise to this claim arose, the hospital was named Promise Regional Medical Center. Throughout the trial you may hear some of the witnesses refer to Promise Regional Medical Center as "Hutch Hospital", "Hutchinson Hospital" and/or "Hutch Regional". As jurors, you are instructed to interpret any reference to Hutch Hospital, Hutchinson Hospital or Hutch Regional to mean Hutchinson Regional Medical Center.

Instruction No. 13

The following facts have been stipulated to by the parties. You are to consider these facts as conclusively established and not controverted for purposes of your deliberations.

1.  Jackie Sarff was admitted to Hutchinson Regional on August 4, 2008, for a laparoscopic assisted right colectomy due to a Grade 2, T3 adenocarcinoma of the right colon.

2.  Mr. Sarff received care and treatment at Hutchinson Regional from the period of August 4, 2008, through August 17, 2008.

3.  On August 12, 2008, the attending physician, Dr. Scott Clarke, ordered placement of an NG tube.

4.  Pursuant to Dr. Clarke's order, nurse Patricia Lisenby attempted to place the NG tube.

5.  On August 12, 2008, during insertion of the NG tube, Mr. Sarff aspirated and coded.

6.  Jackie Sarff (DOB 10/27/34) died on August 17, 2008, at the age of 73 while at Hutchinson Regional. At the time of his death, he was a resident of Great Bend, Barton County, Kansas.

7.  Mr. Sarff's Certificate of Death states an "immediate cause of death of anoxic encephalopathy Due to (or as a consequence of) cardiopulmonary arrest".

8.  Plaintiff Susan Baker is the surviving daughter of the decedent, Jackie Sarff. She was a resident of the State of Illinois at the time of Jackie Sarff's death and is presently a resident of the State of Georgia.

9.  Bonnie Sarff is the surviving spouse of decedent, Jackie Sarff.

10. Patricia Lisenby is a Licensed Practical Nurse and was an employee of Hutchinson Regional during the care and treatment of Jackie Sarff at Hutchinson Regional.

11. Vickie Palmatier is a Registered Nurse and was an employee of Hutchinson Regional during the care and treatment of Jackie Sarff at Hutchinson Regional.

12. Defendant Hutchinson Regional is a healthcare provider under Kansas Law.

Instruction No. 14

The Plaintiffs claim the Defendant was negligent in the following particulars:

1. Allowing Patricia Lisenby to place an NG tube in Jack Sarff, which she was not qualified to do under the hospital's patient safety rules.

2. Failing to assign a Registered Nurse to Jack Sarff for the 7-3 shift on August 12, 2008.

3. Allowing Lisenby to place the NG tube without the assistance or supervision of a qualified Registered Nurse, as required by the patient safety rules at the hospital.

4. Lisenby did not tell Charge Nurse Victoria Palmatier that she did not have her competency validated for NG tube placement.

5. Palmatier did not ask if Lisenby was competent to place an NG tube without assistance or supervision from a qualified Registered Nurse before allowing her to attempt to place the NG.

6. Not properly preparing for the procedure by reviewing the medical record which documented a difficult NG tube placement on August 7, 2008 that required multiple attempts by a Registered Nurse and assistance by the Charge Nurse.

7. Not properly preparing for the procedure by taking airway suctioning equipment to the patient's room to manage the risk of gagging, vomiting and aspiration that is associated with all NG tube placements.

8. Not timely suctioning Sarff's airway with a Yankeur when he started vomiting because Lisenby did not take airway suctioning equipment into the patient's room.

9. Not turning Sarff to the side after he started vomiting to keep his airway clear.

10. Lisenby did not ask for assistance from other nurses when Sarff started vomiting.

11. Delay in calling the Code Blue after it should have been apparent to Lisenby that she could not manage Sarff's airway problem that was caused by her attempt to place an NG tube.

12. Failing to provide critical information to Dr. Sourk, the physician in charge of the Code Blue, that Sarff's respiratory arrest was related to Lisenby's attempted NG tube placement.

Plaintiffs contend the medical care outlined above by Defendant was not standard care and the failure to provide decedent Jack Sarff with standard medical care caused or contributed to his injury and his death on August 17, 2008. The Plaintiffs have the burden to prove that their claims are more probably true than not true. It is not necessary that each of you agree upon a specific claim.

Hutchinson Regional denies plaintiffs' claims of negligence and fault, claiming it, at all times met the standard of care in its involvement in Mr. Sarff's care. Hutchinson Regional further asserts that plaintiffs' alleged injuries and damages are the fault of no one, or in the alternative, are the fault of others over whom Hutchinson Regional had no control or right of control. Hutchinson Regional further asserts that nothing it did or failed to do caused or contributed to plaintiffs' alleged injuries and damages, the nature and extent of which are denied.

Instruction No. 15

In deciding the case, you will need to know the meaning of the terms "negligence" and "fault." In a medical malpractice case, a hospital, through its non-physician employees, has a duty to exercise such reasonable care as the patient's condition may require. The degree of care depends upon the known physical ailments of the patient, as you are instructed in Instruction No. 16. A violation of this duty, also known as a departure from the standard of care, is "negligence".

A hospital is at "fault" when its non-physician employees are negligent, as defined in the preceding paragraph, and that negligence caused or contributed to the event which brought about the injury or damages for which the claim is made. The hospital is not at fault where its non-physician employees are negligent but that negligence did not cause or contribute to the event which brought about the injury or damages.

Instruction No. 16

A hospital's duty to a patient is to use the degree of reasonable care required by that patient's known physical and mental condition. On medical and scientific matters, a hospital's standard of reasonable care is the same care, skill and diligence used by hospitals in the same or similar communities and circumstances. A violation of this duty is negligence.

Instruction No. 17

In determining whether a health care provider used the learning, skill, and conduct required, you are not permitted to arbitrarily set a standard of your own or determine this question from your personal knowledge. On questions of medical or scientific nature concerning the standard of care of a healthcare provider, only those qualified as experts are permitted to testify. The standard of care is established by members of the same profession in the same or similar communities under like circumstances. It follows, therefore, that the only way you may properly find that standard is through evidence presented by expert witnesses.

Instruction No. 18

If you find plaintiffs have proven their claim as set forth in the previous instructions, you must determine whether plaintiffs are entitled to any actual damages. Plaintiffs have the burden of proving any actual damages by a preponderance of the evidence.

Instruction No. 19

In determining the amount of damages sustained by the plaintiffs, you should allow the amount of money which will reasonably compensate plaintiffs for their injuries and damages resulting from the occurrence in question. The amount of damages you determine should include any of the following shown by evidence:

1. MEDICAL EXPENSES: This type of damage includes the reasonable expenses of necessary medical care, hospitalization and treatment received by reason of plaintiffs' injuries from August 12, 2008, through August 17, 2008.

2. ECONOMIC LOSS: This type of damage includes loss of time or income other than medical expenses incurred by reason of plaintiffs' injuries to date and those which plaintiffs are reasonably expected to incur in the future, reduced to present value.

3. NONECONOMIC LOSS: This type of damage includes pain, suffering, disabilities, disfigurement and any accompanying mental anguish by reason of plaintiffs' injuries to date and those which plaintiffs are reasonably expected to suffer in the future.

In determining the amount of damages you should consider the decedent's age, condition of health before and after, and the nature and extent and duration of the injuries. For such items as pain and suffering, disability, and mental anguish, there is no unit value and no mathematical formula the court can give you. You should allow such sum as will fairly and adequately compensate plaintiffs. The amount to be allowed rests within your sound discretion.

You must itemize the amounts of damages awarded in this case on the verdict form that will be given to you.

Instruction No. 20

If you find Plaintiffs are entitled to recover damages, you should allow the amount of money that will reasonably compensate Plaintiffs for the loss caused by Defendant. There are two types of damages you may award: economic and noneconomic.

Economic damages include:

      1. As to Bonnie Sarff:

            a. Lost Value of Family Service (Loss of Nurturing, Guidance and Counseling)

            b. Loss of Marital Care, Attention, Advice, Counsel or Protection

            c. Loss of the Value of a Complete Family

      2. As to Susan Baker:

            a. Lost Value of Family Service (Loss of Nurturing, Guidance and Counseling)

            b. Loss of Parental Care, Attention, Advice, Guidance or Protection

            c. Loss of the Value of a Complete Family

      3. Expenses for the care of the deceased caused by the injury.

      4. Reasonable funeral expenses.

For items 1 and 2 above you should allow an amount that you believe would be equivalent to the benefit Plaintiffs could reasonably have expected to receive from the continued life of the deceased.

Noneconomic damages include:

    1. Mental anguish, suffering, or bereavement.

    2. Loss of society, loss of comfort, or loss of companionship.

For noneconomic damages there is no unit value and no mathematical formula the court can give you. You should allow an amount that you find to be fair and just under all the facts and circumstances.

You will be given a verdict form in which you must itemize the amount of damages awarded for losses to date and the amount of damages awarded for future losses.

*— For non-economic damages*

The court will determine how any amount you allow will be divided among the heirs.

Instruction No. 21

According to life expectancy tables, the life expectancy of a white male, 73 years of age, is an additional 12.05 years.

This figure is to assist you in determining the probable life expectancy of Jack Sarff as it bears on Plaintiffs' future losses and damages. It is not conclusive proof of his life expectancy, and you are not bound by it. It is only an estimate based on average experience. You may find that probably Jack Sarff would have lived a longer or shorter period than that given in these tables. This figure should be considered by you along with evidence of the health, physical condition, habits, occupation, and other circumstances bearing upon his life expectancy.

Instruction No. 22

I have instructed you concerning plaintiffs' damages, but that does not mean I believe the plaintiffs should, or should not, prevail in this case. That decision rests with you.

Your verdict must represent the considered judgment of each juror. Your verdict must be unanimous. In other words, to return a verdict, each of you must agree to it.

If you do not reach a verdict, the parties may be put to the expense of another trial.  If the case is retried, a future jury must be selected in the same way and from the same source as you have been chosen, and we have no reason to think that a future jury would be more competent or that evidence produced at a future trial would be more clear or substantial.

As jurors, you must consult with one another and deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of all the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own views or to change your opinion if you are convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or simply to return a verdict.

Remember at all times you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Instruction No. 23

At times during the trial, I have ruled on the admission of certain testimony and exhibits. Those matters are questions of law for the court. Do not concern yourselves with or draw any inferences from those rulings.

I have not intended to and I do not express or suggest any opinion in these instructions, my rulings, actions or remarks about the resolution of any issue in this case.

You will now hear arguments of counsel. Their role is to offer interpretations of the evidence consistent with their respective causes. Please give them your thoughtful and respectful attention.

Instruction No. 24

Upon retiring to the jury room you should first select one of your number to act as your presiding juror. The presiding juror will preside over your deliberations and speak for you here in court. A form of verdict has been prepared for you.

You will take the verdict form to the jury room, and when you have reached unanimous agreement as to your verdict, you will have your presiding juror fill it in, date and sign it, and then return to the courtroom.

If, during your deliberations, you need to communicate with the court, please write out your message or question, have the presiding juror sign it, and notify our chambers. My law clerk will be dispatched to receive your message or question. I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. With regard to any message or question you might send, you should never state or specify your numerical division at the time. In other words, do not reveal how the group is voting, unless it is in response to a direct question from me about your division.

October 30, 2012
Date

J. Thomas Martin
Judge