IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SUSAN BAKER, INDIVIDUALLY AND ON
BEHALF OF THE HEIRS AT LAW OF JACKIE L.
SARFF, *Deceased*,

        Plaintiff,

        vs.                Case No. 10-1257-JTM

PROMISE REGIONAL MEDICAL CENTER –
HUTCHINSON, INC., *formerly known as*
HUTCHINSON HOSPITAL CORPORATION,

        *Defendant.*

MEMORANDUM AND ORDER

Jackie Sarff died while in the care of the defendant Promise Regional Medical

Center, Inc. His daughter Susan Baker subsequently brought an action against the hospital,

alleging that the death occurred through negligence in the placement of a nasogastric tube

by an inadequately trained nurse. The jury returned a verdict for the plaintiff, awarding

$25,255.19 in medical expenses, $12,739.44 in funeral expenses, $500,000 in damages to

Sarff's wife, Bonnie, and $300,000 in damages to Susan Baker. The hospital has moved for

a new trial, arguing that the court erred in failing to give a requested instruction, that

insufficient evidence supports the award for Bonnie Sarff, and that Susan Baker was not

entitled to recovered damages for loss of a complete family. The court denies the motion.

First, the hospital assigns as error the courts refusal not to give its requested instruction, which provides:

> Health care providers are presumed to have skillfully treated a patient. A health care provider is not a guarantor of a good result. There can be no presumption of negligence from the mere fact of an injury or an adverse result.

The hospital concedes that the requested instruction is not approved by the Pattern Instructions, appearing only in the commentary to P.I.K. 4th 123.01, but argues that its "proposed instruction has been historically applied." (Dkt. 137, at 4).

This is inaccurate. The general principle recognized in the hospital's requested instruction does indeed have a long pedigree, but not *as an instruction*. Rather, the principle has been recognized as courts have addressed general questions of law or the sufficiency of the evidence following a verdict, but without any indication that it is a necessary or even recommended instruction.[1]  Other cases mention the principle in appeals from demurrer or summary judgment rulings,[2] or involve decisions by this court in resolving summary

---

[1] *See Kansas Malpractice Victims Coalition v. Bell*, 243 Kan. 333, 757 P.2d 251 (1988) (principle mentioned in passing on constitutional challenge to statutory damage caps), *overruled in part on other gds., Bair v. Peck*, 248 Kan. 824, 811 P.2d 1176 (1991); *Durflinger v. Artiles*, 234 Kan. 484, 673 P.2d 86 (1983) (stating "no guarantor" language in context of certified question by Tenth Circuit as to viability of claim for negligent release of state inmate), *overruled in part on other gds., Boulanger v. Pol*, 258 Kan. 289, 900 P.2d 823 (1995). *See also Nold ex rel. Nold v. Binyon*, 272 Kan. 87, 103-04, 31 P.3d 274 (2001) (principle that malpractice may not be inferred from mere lack of success mentioned in context of necessity for expert testimony); *Wozniak v. Lipoff*, 242 Kan. 538, 607, 750 P.2d 971 (1988) (following *Durflinger*, which "discussed the fundamental principles of the law of negligence"); *Goheen v. Graber*, 181 Kan. 107, 113-15, 309 P.2d 636 (1957) (following *Durflinger*); *James v. Grigsby*, 114 Kan. 627, 220 P. 267 (1923)

[2] *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 134, 795 P.2d 915 (1990) (noting in appeal from summary judgment that "negligence cannot be presumed from the fact of

2

judgment motions.[3] In both situations the respective courts were necessarily not concerned with formulating appropriate instructions for a jury. In the only case cited by the defendant which does mention the general issue in the context of instructions, the court in *Natanson v. Kline*, 186 Kan. 393, 413, 350 P.2d 1093 (1960) simply rejected a *plaintiff's* request for an instruction which would have told the jury the *opposite* — that they "might consider the fact of injury as evidence of negligence." The hospital has never, either at trial or in its present motion, pointed to a single case supporting the requested instruction being given to a jury, and the court has not been able to locate such a case.

In contrast, *Leiker v. Gafford*, 245 Kan. 325, 778 P.2d 823 (1991), *overruled on other gds., Martindale v. Tenny*, 250 Kan. 621, 829 P.2d 561 (1992) supports the decision not to issue the requested instruction. In that case, the defendants requested an instruction highly similar to that sought by the hospital here:

> In medical malpractice actions, the physician or surgeon is presumed to have carefully treated or operated on his patient and there is no presumption of negligence from the fact of an injury or adverse result. The physician or

---

injury or adverse result"); *Johnston v. Elkins*, 241 Kan. 407, 411, 736 P.2d 935 (1987) ("[f]ailure of the physician to achieve success does not automatically indicate negligence"); *Webb v. Lungstrum*, 223 Kan. 487, 489, 575 P.2d 22 (1978) ("there is no presumption of negligence from the fact of an injury or adverse result"); *Collins v. Meeker*, 198 Kan. 390, 395, 424 P.2d 488 (1967); *Voss v. Bridwell*, 188 Kan. 643, 364 P.2d 955 (1961); *Cunningham v. Riverside Health Sys.*, 33 Kan. App. 2d 1, 8, 99 P.3d 133 (2003) (neligence "may not be inferred merely from a lack of success or an adverse result from treatment"); *Smith v. Milfeld*, 19 Kan. App. 2d 252, 255, 869 P.2d 748 (1993) (discussing principle in context of summary judgment ruling).

[3] *Latshaw v. Mt. Carmel Hosp.*, 53 F. Supp. 2d 1133, 1138 (D. Kan. 1999); *Rios v. Bigler*, 847 F. Supp. 1538, 1542 (D. Kan. 1994), *affirmed,* 67 F.3d 1543 (10th Cir. 1995); *Elliot v. Kitowski*, 786 F. Supp. 917, 918 (D. Kan. 1992).

surgeon is not a guarantor of good results, and civil liability does not arise
merely from bad results, or if bad results are due to some cause other than
treatment.

245 Kan. at 349. The defendants in *Leiker* relied on many of the same authorities relied upon

now by the hospital. The court found that those cases were irrelevant where the plaintiff

was not relying on *res ipsa loquitur*, but advanced "specific allegations of negligence

supported by expert testimony." *Id*. The trial court had accurately instructed the jury that

the plaintiffs had the burden of proof, and supreme court held that the requested

instruction was not merely unnecessary, but appropriately avoided, since it "could have

misled the jury into believing that the plaintiffs' burden of proof was greater than a

preponderance of the evidence." *Id*.

Kansas law generally supports the use of PIK instructions. *See State v. Hebert*, 277

Kan. 61, 87, 82 P.3d 470 (2004). The Kansas Supreme Court has observed that

> The use of PIK instructions is not mandatory but is *strongly recommended.* The
> pattern instructions have been developed by a knowledgeable committee to
> bring accuracy, clarity, and uniformity to jury instructions. They should be
> the starting point in the preparation of any set of jury instructions. If the
> particular facts in a given case require modification of the applicable pattern
> instruction, or the addition of some instruction not included in PIK, the trial
> court should not hesitate to make such modification or addition. However,
> absent such need, PIK instructions and recommendations should be
> followed.

*State v. Dias*, 263 Kan. 331, 949 P.2d 1093 (1997) (quoting *State v. Moncla*, 262 Kan. 58, Syl.

¶ 5, 936 P.2d 727 (1997)) (emphasis added in *Dias*). The *Dias* noted its earlier holdings in

*Moncla* and in other cases were made "with the hope that non-PIK, individually crafted

instructions will be afforded, at best, archival status." *Id*.

Here, the court otherwise properly instructed the jury as to the plaintiff's burden of proof. Given those instructions, the court finds no basis for the relief sought by the defendant.

The hospital's second argument is that the $800,000 award for damages to Bonnie Sarff is not supported by the evidence. The defendant notes that the court may overturn an award which is so excessive as to shocks the judicial conscience, raising the inference that passion, prejudice, corruption or other improper cause invaded the trial. *Griffith v. Mt. Carmel Med. Ctr.*, 842 F. Supp. 1359, 1365 (D. Kan. 1994). At the same time, there is "no fixed or absolute standard for measuring in dollars and cents the adequacy or inadequacy of a verdict in an action to recover for personal injuries." *Kirk v. Beachner Construction Co., Inc.*, 214 Kan. 733, Syl. ¶ 3, 522 P.2d 176 (1974). The court award here is not so large as to itself indicate that it was the product of passion or prejudice. *See Leiker*, 245 Kan. at 348 (upholding award of $1,000,000 for pecuniary damages, including loss of parental care and attention and loss of maternal training and guidance); *Cerretti v. Flint Hills Electric Co-op Ass'n*, 251 Kan. 347, 365, 837 P.2d 330, 344 (1992) (upholding award of $200,000 to a surviving husband and $850,000.00 to three surviving children based on testimony of husband and economist, observing "there can be no serious contention that the care, guidance, and services of a spouse and parent lack monetary value"); *Wentling v. Medical Anesthesia Services*, 237 Kan. 503, 508, 701 P.2d 939 (1985) (approving award of $761,166.64 for pecuniary losses).

Nor does the court find that the award is unsupported by the evidence. In *Wentling*, the court asked whether

> the inability of plaintiff and his expert witness to translate the loss of services, care and guidance into a specific monetary figure fatal ... to plaintiff's recovery? We think not. Plaintiff has satisfied his burden of proof by showing the nature and extent of these losses, and the triers of fact are presumed to be capable of converting the losses into monetary equivalents on the basis of their own experience. In this case the award cannot be said to have been based on "speculation" as there is little doubt from plaintiff's testimony he and his children actually suffered these losses, perhaps even to an aggravated degree, when one considers the special person Joetta Wentling appears to have been. To hold otherwise would allow the defendant tortfeasor a virtual windfall simply because these losses are not capable of precise measurement. In addition there is really no serious contention that the care, guidance and services of a spouse and parent lack monetary value. Considering these particular pecuniary losses, plaintiff's evidence at trial satisfied his burden of proof ... probably to the full extent it is possible to do so. If his testimony is deemed not sufficient, it is unclear what, if any, further evidence could have been offered to satisfy defendant. The mere fact these items of loss, having acknowledged economic value, are incapable of exact economic *valuation* does not mean plaintiff should be denied recovery. The jury was capable of exercising its collective experience and judgment in this matter....

237 Kan. at 513-14, 701 P.2d at 948 (emphasis in *Wentling*). Construed in the light most favorable to the plaintiff, the court finds that the evidence supports the jury's verdict. Here, the jury heard testimony from Bonnie Sarff as to the nature of her relationship with the decedent, and that the couple looked forward to life after his retirement. He was a very loving husband and a devoted grandfather. He was very helpful around the house, and the couple lived in a very traditional relationship where she relied on her husband for a great deal. She testified to the services, support, protection, advice, and counsel which helped to create a particularly close family unit.

6

Susan Baker is an adult, but was an only child and had a particularly close relationship with her father, who helped her with the loss of her own son from a congenital heart defect. He played a strong role in helping her with her other three children. He and his wife visited often, and Baker would sometimes visit her parents for six to eight weeks during the summer. Baker spoke with her father frequently on the telephone. He continued to provide parental advice, attention, guidance even after Baker became an adult. She described the great hole left in her life after her father's death. Even when she was away, they were not apart. Bonnie and Jackie came to visit at least once a year. Susan and her family would travel to Kansas to visit. The families went on vacations together. They talked frequently on the phone.

The court finds that the awards on behalf of Susan Baker and Bonnie Sarff are supported by substantial evidence, and denies the defendant's request for a new trial on that basis.

Next, the hospital argues that the court erred in including "loss of a complete family" as a component of the economic damages awardable to Susan Baker. The hospital argues that while Kansas has recognized a right for children to recover for loss of a complete family, this has occurred in the context of minor children. *See Wentling*, 237 Kan. at 504, 701 P.2d at 941; *Griffith*, 842 F.Supp. at 1371-72. The plaintiff does not respond directly to the argument, asserting only that any error should be presumed harmless, as the verdict form combined all *Wentling*-type damages into one amount. Since the hospital failed to propose an itemized verdict, she argues, any error should be presumed harmless.

Here, the plaintiff explicitly advanced loss of complete family claims for both Bonnie Sarff and Susan Baker in the Pretrial Order. (Dkt. 93, at 15). The hospital's original requested instructions ignored the claim by Susan Baker in her own behalf, and offered instructions only as to the claim for recovery on behalf of her mother. (Dkt. 125). Similarly, the hospital made no attempt to preclude the claim by Susan Baker in its otherwise extensive motions *in limine*. (Dkt. 95, 96, 116, 117).

At the instruction conference, the hospital did object to an award of loss of a complete family to Susan Baker, as referenced in Instruction 20, and on the verdict form. Susan Baker is an adult, the hospital argued, and so not eligible to recover given "the general flavor of the limited case law involving this language."

The verdict form authorized by the court follows the Wrongful Death Instructions of PIK 171.30 and 171.31, which explain the types of economic damages the plaintiff may recover (including *Wentling*-type losses), and inform the jury that for each type of economic loss "you should allow an *amount* that you believe" plaintiff should recover — using the singular rather than plural. (Emphasis added). *See Maxwell v. Wilshire Ins.*, No 91,332, 2005 WL 400406, *6 (Kan.App. Feb. 18, 2005) (beyond the distinction between past and future economic losses, "[t]here is noting in the [wrongful death] statute suggesting that either economic or noneconomic damages be further specified" in the verdict).

The defendant is correct that the case law in Kansas as to loss of a complete family in parental wrongful death actions is limited, and those actions have generally involved awards to minor children. *See, e.g., Cerretti v. Flint Hills Electric Co-op Ass'n*, 251 Kan. at 348.

8

However, nothing in those decisions explicitly or implicitly prohibits recovery by adult offspring.

Moreover, there are some indications in Kansas law that a party who wrongfully causes death may be responsible for the loss of a complete family, even if the decedent and survivor are both adults. In *Maxwell v. Wilshire Ins.*, 2005 WL 400406, the plaintiffs asserted a wrongful death claim on behalf of their eighteen-year-old son. In their appeal of the verdict for the defendant, the plaintiffs argued that the trial court erred in failing to specifically "add line entries for [*Wentling*-type damages, such as] loss of service; loss of care; loss of attention; loss of guidance; [and] loss of complete family." As noted earlier, the Court of Appeals held that the trial court was not required to provide separate line entries on the verdict form for each form of injury, not that such damages cannot be recovered once the decedent attained his majority.

Similarly, in *Natalini v. Little*, 278 Kan. 140, 92 P.3d 567 (2004), the plaintiff (who died after the trial of the action) brought a medical malpractice action in July of 2000 on behalf of his surviving wife and adult children for the failure in a March, 1996 CT scan to detect the lung cancer which would eventually kill him. The jury returned a verdict on behalf of the plaintiffs, including claims for loss of a complete family. This award was reversed by the Supreme Court because the action was untimely. The court held that the unambiguous effect of the four-year statute of repose, K.S.A. 60-513(c), and the wrongful death statute, K.S.A. 60-1901, combined to ensure that "even if a malpractice plaintiff's premature death is highly likely to be caused by the malpractice, plaintiff's survival for more than 4 years

beyond the negligent act means no wrongful death action will ever be possible." 278 Kan. at 143.

"Although family members of the patient would qualify at the time of death as heirs at law entitled to seek recovery in a wrongful death suit," they could not present their claims as a wrongful death action because the parent was still alive at the time of the suit. *Id.* Conversely, the court rejected the argument of counsel that the family ought to be able to recover consortium damages in the plaintiff's personal injury action. *Id.* at 144-45, citing and quoting *Klaus v. Fox Valley Systems, Inc.*, 259 Kan. 522, 528–29, 912 P.2d 703 (1996) (recognizing the "the vitally important parent-child relationship ... that is indeed valuable and precious"). As the court stressed, in *Klaus* and other decisions, "adult or even minor children ... may not bring an independent cause of action in Kansas to recover for injuries to a *living* parent." *Id.* at 144 (emphasis added). The court concluded "[h]ad [the plaintiff] died as a result of [defendant's] negligence within the 4 years, a wrongful death action also would have been possible" on behalf of his spouse and adult children. *Id.* at 146

In *Natalini* and *Maxwell,* adult children explicitly asserted claims for loss of a complete family. Otherwise, the ability to recover for pecuniary damages due the wrongful death which disrupts an adult family relationship is firmly established in Kansas law. *See Huffman v. Thomas*, 26 Kan.App.2d 685, 692, 994 P.2d 1072 (1999). Given the vital, valuable, and precious nature of the parent-child relationship, the court finds no reason why the adult status of Susan Baker should preclude her from any recovery for the loss of a complete family. The defendant's arguments relating to the value of that loss are directed

to the weight of the evidence, not the ability of the plaintiff to recover.  Accordingly, the court finds no error in the instructions submitted to the jury, or in the award to Susan Baker.

Finally, the court notes that the hospital suggests remittitur of the award to Bonnie Sarff from $500,000 to $250,000, and of the award to Susan Baker from $300,000 to $50,000. A court is empowered to set a "reasonable amount" to a plaintiff's damages "[i]f [it] finds that insufficient evidence exists, or finds the amount of the verdict a product of jury passion or prejudice." *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1448 (10th Cir.1987), *cert. denied, Playtex Holdings, Inc. v. O'Gilvie*, 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 601 (1988). *See Miller v. Johnson*, 289 P.3d 1098, 1123 (2012) ("power of remittitur is incident to the power to grant a new trial after the verdict is determined to be excessive"). Where an objection is made to the size of an award, "no remittitur will be awarded unless the amount of the verdict in light of the evidence shocks the conscience of the appellate court." *Leiker*, 245 Kan. 325, Syl. ¶ 10.

Here, the court finds that the awards are supported by substantial and sufficient evidence, and declines to authorize any remittitur.

IT IS ACCORDINGLY ORDERED this 15th day of February, 2013, that the defendant's Motion for New Trial or Remittitur (Dkt. 136) is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

11